UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 3:19-cr-00069 (VLB) |
| : | |
| JOHN DEPPERT : | |
| Defendant. : | May 19, 2021 |
| : | |
| : | |
| : | |
| : | |
| : | |

## ORDER ON DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL

On April 4, 2019, Defendant John Deppert ("Defendant") pled guilty to Count One of an Indictment charging him with Theft of Government Money in violation of 18 U.S.C. § 641. [ECF Nos. 1, 13]. Defendant admitted that he had intentionally defrauded the United States Department of Veterans Administration (the "VA") of $72,292 in funds intended for Defendant's sister, Suzanne Johnston, who had passed away, in part by impersonating her over the telephone while discussing the case with VA personnel.

Specifically, after his sister died and her VA benefits terminated, on October 7, 2017 Mr. Deppert called the VA and falsely claimed his sister was alive and that the VA had confused her with another individual with a similar name who had died. [ECF No. 23 (PSR) ¶ 13]. As a result, the VA reinitiated benefits payments to Ms. Johnston's bank account and issued a back payment of benefits. *Id.* Mr. Deppert had access to his deceased sister's bank account and misappropriated the funds deposited in the account. [ECF No. 23 (PSR) ¶ 18].

1

Thereafter, in April 2018, through a records match program, the VA again identified that Ms. Johnston had died. On April 27, 2018, a VA employee contacted the telephone number for Ms. Johnston that Mr. Deppert provided on October 4, 2017. Mr. Deppert answered that call and impersonated his sister. Mr. Deppert provided his sister's correct date of birth and Social Security Number and stated that "she" was alive. [ECF No. 23 (PSR) ¶ 14].

Mr. Deppert called the VA on May 4, 2018, at 9:45 p.m., representing himself to be Ms. Johnston, and left a message on a VA employee's voicemail system requesting that all future contact with Suzanne be faxed or emailed. [ECF No. 23 (PSR) ¶ 15].

Exploiting his position as a nursing home employee, on May 23, 2018, Mr. Deppert sent a fax from his employer's fax machine to the VA with a change of address form attached to it. The coversheet of the fax stated: "I am alive and living in Woodstock Valley, CT!" and was signed by "Veteran, Suzanne Johnston." [ECF No. 23 (PSR) ¶ 16].

On August 1, 2018, VA agents interviewed Mr. Deppert at his home in Woodstock, Connecticut. He advised agents that his sister lived with him at the house, but that she was currently in the psychiatric unit of a University of Massachusetts Hospital. Mr. Deppert stated his sister's identification had been mixed up with a "Sue Johnson," who was deceased, and that the mix-up had caused confusion in his sister's VA benefits. [ECF No. 23 (PSR) ¶ 17].

The agents reminded Mr. Deppert that lying to a federal agent was a crime, but he persisted in his deceit, insisting "[e]verything I told you is true." After the agents then showed Mr. Deppert the Worcester Police Department report from January 16, 2015, in which the responding officers found his sister in her apartment, deceased and cold to the touch and informed him that they believed he knew his sister had died and that he was taking the money in her bank account for his own use, Mr. Deppert falsely claimed someone once told him that he would be entitled to his sister's benefits when she died, but inexplicably stated he began impersonating her to continue receiving the benefits he claimed he thought he was entitled to receive. *Id.*

The Court sentenced Defendant over the course of two hearings, on July 24 and September 11, 2019, to six months' imprisonment followed by two years' supervised release. [ECF Nos. 29, 34, 36]. The Court also Ordered Defendant to pay restitution to the Government in the amount stolen, $72,292. [ECF Nos. 36, 44].

On September 20, 2019, Defendant filed a Notice of Appeal. [ECF No. 37].

On July 30, 2020, the United States Court of Appeals for the Second Circuit remanded Defendant's appeal to this Court "to permit the district court to clarify whether it considered an impermissible sentencing factor—the cost of home-confinement—in imposing [Defendant's] sentence." [ECF No. 46]. As explained in the Court's response to the remand, the Court did not consider the cost of home confinement in sentencing Defendant; rather, "the Court considered only factors

3

called for by 18 U.S.C. § 3553(a), such as the nature of the offense, the need to protect the public, the need for general and specific deterrence, etc." [ECF No. 49].

On August 19, 2020, the Court of Appeals then recalled its mandate and reinstated Defendant's appeal. [ECF No. 50].

On March 29, 2021, the Second Circuit vacated Defendant's sentence and remanded the case for resentencing, finding that it was possible the Court incorrectly believe that a downward departure or variance would be required to impose a non-custodial probation or home confinement sentence, that the Court improperly used prior criminal charges for which no conviction had entered as a basis for its sentence, and that the Court improperly considered Defendant's failure to inform his employer about his current offense as bearing on Defendant's dishonesty, given that he had no legal obligation to do so. [ECF Nos. 59, 62].

On April 19, 2021, the Court sentenced Defendant to six months' incarceration. [ECF No. 63].

On April 26, 2021, Defendant filed a Notice of Appeal, [ECF No. 66], and on May 5, 2021, Defendant filed the instant Motion for Release Pending Appeal. [ECF No. 69].

## Legal Standard

18 U.S.C. § 3143(b): Release or Detention Pending Appeal by the Defendant, states that:

>**(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>>**(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>>**(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>>**(i)** reversal,
>>>**(ii)** an order for a new trial,
>>>**(iii)** a sentence that does not include a term of imprisonment, or
>>>**(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
>If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title.

"The application of § 3143(b)(1) therefore results in a four-part test as follows: (1) that the person is not likely to flee or pose a danger to the safety of any other person or the community; (2) that the appeal is not for the purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to the defendant on appeal, that decision is likely to result in a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *United States v. Gordon*, No. 03 Cr. 1115-03 (RWS), 2007 U.S. Dist. LEXIS 4372, at *7-8 (S.D.N.Y. Jan. 22, 2007) (citing *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985)). Defendant "bears the burden of persuasion to meet each of these elements." *United States v. Connelly*, No. 3:16-cr-00125 (MPS), 2018 U.S. Dist. LEXIS 203695, at *4 (D. Conn. Dec. 3, 2018) (citing *Randell*, 761 F.2d at 125); *see also Randell*, 761 F.2d at 125 ("on

5

all the criteria set out in subsection (b), the burden of persuasion rests on the defendant."). "In *United States v. Randell,* the Second Circuit defined 'a substantial question of law or fact' as 'one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Gordon*, 2007 U.S. Dist. LEXIS 4372, at *9 (quoting *Randell*, 761 F.2d at 125).

## Analysis

Defendant argues Subsection A of 18 U.S.C. § 3143(b)(1) is met, in that he "is not likely to flee or pose a danger to the safety of any other person or the community if released," because his "conduct on release during the pendency of this case—including while previously released on bond pending appeal—demonstrates that ongoing release does not create any meaningful risk of flight or danger to the community. Mr. Deppert is now 66 years old and in a stable long-term relationship. He has no history of failing to appear, and his minimal past criminal history is over 25 years old. He has no opportunity to commit an offense similar to the offense of conviction in this case, and the criminal consequences for failure to appear to serve his sentence would likely far exceed the six-month period of confinement he now faces." [ECF No. 69 at 1-2].

Defendant argues Subsection B of 18 U.S.C. § 3143(b)(1) is met, in that his appeal raises two substantial questions; namely, that (1) "the Court relied upon a conclusion that Mr. Deppert posed a danger to the public, specifically vulnerable elderly members of the public. The offense in this case did not involve any victim

6

other than the government itself, and no record evidence otherwise supports the inference that Mr. Deppert, who has spent much of his later career as a hospital-based caregiver, poses a risk to elderly members of the public. A properly imposed sentence must be based upon facts contained in the record and found by a preponderance of evidence," and (2) "this was a case in which a non-prison sentence was consistent with the sentencing guidelines and where the government did not affirmatively seek a prison sentence. A sentence of incarceration is inconsistent with the dictate of 18 U.S.C. § 3553(a) that the Court 'shall impose a sentence sufficient, but not greater than necessary' to comply with the purposes of sentencing." [ECF No. 69 at 3].

Defendant fails to show that his appeal raises a "substantial question of law or fact" and is not "for the purpose of delay." 18 U.S.C. § 3143(b)(1)(B). Defendant is technically correct that the victim in this case is the Government, but he misses the import of the Court's concern. Much as a drug distribution crime often has "no identifiable victim" despite its contribution to the destruction of whole communities and the death of drug users who inevitably overdose, Defendant's crime here, while technically harming "only" the federal government, was accomplished through the rank abuse of an extremely vulnerable, elderly woman; namely, the Defendant's own sister.

Defendant's sister, Suzanne Johnston, was a military veteran who received disability compensation benefits from the VA through a direct deposit to her bank account at Digital Federal Credit Union. Ms. Johnston died of natural causes at the age of 61 on January 16, 2015. [ECF No. 23 (PSR) ¶ 10].

On a State of Massachusetts, Department of Transitional Assistance form provided by the funeral home handling Ms. Johnston's arrangements, Defendant indicated that Ms. Johnston was receiving state benefits at the time of her death, but intentionally and incorrectly stated that she did not own any personal property (including bank accounts), and that there was no "Veteran's death benefit" for her. Defendant signed the form under penalty of perjury on January 18, 2015. *Id.* ¶ 11. Both before and following Ms. Johnston's death, Defendant had access to her bank account at Digital Federal Credit Union. *Id.* ¶ 12. In other words, Defendant used his sister's identity, personal information, and bank account to steal from the federal government. He was able to commit this crime because he was in a position of trust which gave him access to her personal information and situation.

In addition, Defendant was terminated for misconduct from his employment at Sandalwood Care and Rehabilitation Center in Oxford, Massachusetts, where he worked from January 20, 2017 to August 17, 2018. Mr. Deppert lied to an Officer of this Court about the reason for his termination. He told his Probation Officer during his presentence interview in the instant matter that he resigned from Sandalwood to secure employment at his later employer, Harrington Hospital. [ECF No. 23 ¶ 57]. Sandalwood advised Probation that he was terminated for misconduct as reported in the Supplemental PSR. [ECF No. 26 at 1]. Although the record does not disclose the type of conduct for which he was terminated, one can reasonably infer that it had something to do with the patients housed at Sandalwood and that it was serious enough to warrant termination rather than a lesser sanction. In

addition, Defendant has not chosen to disclose what occurred and dissuade the Court from thinking that it was related to a nursing home patient.

This evidence is in the record and readily reviewable by the Court of Appeals. And it indicates that Defendant *is* a potential danger to elderly, vulnerable members of society, based on his conduct regarding this offense and at Sandalwood. This is why the Court sentenced Defendant to six-months' imprisonment, not only to protect elderly, vulnerable members of the public while Defendant is incarcerated, but also, and more importantly, to specifically deter Defendant from ever taking advantage of another vulnerable senior who is receiving some form of monetary benefit that Defendant might be able to poach. A period spent in prison will hopefully convince Defendant that such conduct is not worth it and perhaps will impress upon him that it was, and is, wrong, in a way that a probationary sentence to home confinement cannot do. The Court, therefore, finds that Defendant has not asserted a "substantial question" for appeal. For the same reasons, the Court finds that Defendant has not shown by clear and convincing evidence that he would not be a danger to vulnerable, elderly members of the public who are critically dependent on the Government to meet their day-to-day survival needs.

The Court pauses to note the unrelenting persistence with which Defendant defrauded the federal government and his sister, and is extremely concerned that if Defendant were to encounter another vulnerable senior who receives government benefits while Defendant is working at a senior living facility, which Defendant has oft stated he intends to do, he may, prior to incarceration, be

tempted to defraud that senior and the government entity providing benefits the same way he did to his sister and the federal government.

In sum, Defendant received a Guideline sentence, which is generally in the "heartland." The Court did not believe that a lower sentence would be as effective in serving the purposes of sentencing, for the reasons set forth above, and the Court, therefore, need not have chosen a lower sentence. Nor, in this case, should it have.

## Conclusion

Because the Court finds that the requirements of 18 U.S.C. § 3143(b)(1) are not met, the Court DENIES Defendant's Motion for Release pending Appeal.

      /s/
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: May 19, 2021